**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| **FULLER'S SERVICE CENTER, INC.** | ) | **CASE NO. 25-1345** |
| | ) | |
| **DEBTOR.** | ) | **JUDGE DEBORAH L. THORNE** |

# MEMORANDUM OPINION

This is a claims estimation proceeding brought by N. Neville Reid, the chapter 11 Trustee of Fuller's Service Center, Inc. (the Debtor). The Trustee seeks to establish the value of the claim filed by the Estate of Sean Patrick Richards (the Richards) under 11 U.S.C. § 502(c) to assist in proposing a feasible plan. After reviewing the report of the Trustee's expert, Thomas L. Hogan of TLH Consulting, listening to Mr. Hogan's testimony and cross-examination during the estimation hearing, and reviewing the documents admitted into evidence and the written closing arguments, the court estimates the Richards' claim at $68,000,000.00 under 11 U.S.C. § 502(c).

## I. Jurisdiction

This court has subject matter jurisdiction under 28 U.S.C. § 1334(b). Claim estimation under 11 U.S.C. § 502(c) is a core proceeding when conducted for the purpose of confirming a plan. 28 U.S.C. § 157(b)(2)(B); *In re UNR Indus., Inc.*, 45 B.R. 322, 326 (N.D. Ill. 1984).

## II. Background

The court made extensive findings of fact in this case, which can be found in its prior Memorandum Opinion. *See In re Fuller's Serv. Ctr., Inc.*, 675 B.R. 575 (Bankr. N.D. Ill. 2025). As such, the court will provide only the facts necessary to understand the present dispute. On April 14, 2026, the Trustee filed a motion to estimate the Richards claim against the

Debtor, (Motion to Estimate Claim # 31, Dkt. 321), which the court granted on April 27. (Dkt. 341). As part of this process, the Trustee, with the agreement of all parties, including the Fuller related entities and family members (Fuller Family), hired Mr. Hogan, (Application to Employ TLH Consulting, Dkt. 320), who was asked to estimate "the reasonably probable amount of damages (compensatory and, if appropriate, punitive), a jury would award assuming Plaintiffs sought the highest amounts possible, without taking into account the existence of the debtor's bankruptcy case, the availability of insurance, or the solvency or collectability of Fuller's Service Center, Inc." *Id.* at 17. Mr. Hogan was also asked to estimate the highest and lowest reasonably probable amount of damages a jury would award under the same parameters. *Id.* Neither the Debtor nor the Fuller Family objected to Mr. Hogan's retention, nor did they retain their own expert. *See* Transcript of Record at 15, 170–71, *In re Fuller's Service Center, Inc.*, 25-01345 (2026) Dkt. 433.

Mr. Hogan delivered his report on June 15, concluding that the lowest reasonable probable jury verdict was $39,000,000.00, and the highest reasonable probable jury verdict was $77,500,000.00. *See* Trustee's Notice of Filing Claims Estimation Expert Report ("Expert Report"), Dkt. 374. Mr. Hogan's report further stated that "the most reasonable probable jury verdict will be approximately $68,000,000.00, comprised of a $2,000,000.00 award based on the Survival Count and $66,000,000.00 on the wrongful death count." *Id.* at 7. To arrive at these figures, Mr. Hogan considered seven factors:

> (1) nature and extent of the claimed injury; (2) any agreement as to liability, (3) the lawyers representing the plaintiff and the defendant; (4) how the plaintiff or defendant's damage witnesses will present to the jury, (5) the county/court where the trial will occur and where the jury will be empaneled, (6) verdicts in other similar cases, and (7) whether verdicts in the jurisdiction have continued to rise in recent years.

*Id.* at 3–4. Mr. Hogan also reviewed the relevant pleadings and discovery documents, heard in-person presentations regarding the value of the claim, and reviewed over 100 records in the Cook County Jury Verdict Reporter for the last five years to find factually similar cases. *Id.* at 5, 7. Acknowledging that discovery was ongoing, Mr. Hogan stated he had "sufficient information to reliably estimate the reasonable probable value of the Richards Claim to a reasonable degree of certainty." *Id.* at 5; *see also* Transcript of Record at 81:2–7, Dkt. 433 (testifying that Mr. Hogan had sufficient information to accurately estimate the probable value of the claim).

Mr. Hogan did not increase his estimation to account for the potential of punitive damages because he did not believe the Plaintiffs would be able to convince a judge to instruct a jury on punitive damages. (Expert Report at 3–4, Dkt. 374). He reiterated that to the court, testifying that although he could not rule out the possibility of punitive damages being applied, "based on the evidence that's been adduced so far, [he does] not believe that there will be a separate cause of action or separate count within the complaint allowing the jury to award punitive damages." (Transcript of Record at 40–41, Dkt. 433).

The court finds Mr. Hogan's report persuasive and holds that $68,000,000.00 is an appropriate estimation of the value of the Richards' claim under 11 U.S.C. § 502(c).

## III. Discussion

### A. Section 502(c)

Section 502(c) provides in relevant part,

There shall be estimated for purpose of allowance under this section—

> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case. . . . .

11 U.S.C. § 502(c). Despite the word "allowance" in § 502(c), courts have used the provision as a basis for estimation for temporary purposes and not only for allowance. *In re NESV Ice, LLC,* 2023 WL 2278603, *1 (Bankr. D. Mass. Feb. 28, 2023). Claim estimation for purposes of voting and plan confirmation does not determine the final amount of the claim but only provides "limited voting authority to a creditor" to prevent undue delay of the chapter 11 case. *Armstrong v. Rushton (In re Armstrong),* 292 B.R. 344, 354 (B.A.P. 10th Cir. 2003). Claim estimation may also be used to determine whether a feasible plan can be proposed. *See, e.g.*, *In re Chicago Invs., LLC*, 470 B.R. 32, 102 (Bankr. D. Mass. 2012) ("[E]stimation is appropriate to gauge the feasibility of the Fourth Amended Plan and determine voting rights.").

Neither the Code nor the Federal Rules of Bankruptcy Procedure provide any procedures or guidelines for estimation. Courts addressing the issue have held that when estimating a claim, courts should use "whatever method is best suited to the circumstances." *In re Farley, Inc.,* 146 B.R. 748, 753 (Bankr. N.D. Ill. 1992) (quoting *Matter of Brints Cotton Mktg., Inc.,* 737 F.2d 1338, 1341 (5th Cir. 1984)); *see also In re Windsor Plumbing Supply Co., Inc.,* 170 B.R. 503, 520–21 (Bankr. E.D. N.Y. 1994). Because courts have broad discretion in deciding how to estimate a claim, they may shape their own procedures to "best suit[] . . . the contingencies of the case." *In re Chemtura Corp.,* 448 B.R. 635, 649 (Bankr. S.D.N.Y. 2011). Claim estimations under § 502(c) need not be exact, nor must the estimating judge be certain about the estimation. *Matter of Fed. Press Co.*, 116 B.R. 650, 653–54 (Bankr. N.D. Ind. 1989). Only a reasonable estimation is required. *See id.* at 653 ("[A] court only needs to reasonably estimate the probable value of the claim.").

In conducting claim estimations, courts are bound by "the legal rules which may govern the ultimate value of the claim . . . [and] those general principles which should inform

all decisions made pursuant to the Code. *Windsor*, 170 B.R. at 520 (quoting *Bittner v. Borne Chem. Co.,* 691 F.2d 134, 135-36 (3d Cir. 1982)). For this reason, the court must do its best to apply Illinois law.

**B. The Illinois Wrongful Death Act and Survival Act**

The Richards filed an action against the Debtor and others in the Illinois circuit court alleging claims under both the Wrongful Death Act and the Survival Act. *Richards v. 102 W. Chicago, LLC,* Case No. 2023-L-01257 (Ill. Cir. Ct.).

Section 1 of the Wrongful Death Act provides in relevant part,

> Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, including punitive damages when applicable, in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, including punitive damages when applicable, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

740 Ill. Comp. Stat. Ann. 180/1. Thus, if the circuit court finds that the Debtor caused the death of Sean Patrick Richards in a manner that would have otherwise allowed the decedent to sue for and recover damages, the Debtor will be held liable in an action for damages.

Section 2 provides in relevant part,

> Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person. In every such action **the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, including damages for grief, sorrow, and mental suffering, and punitive damages when applicable**, to the surviving spouse and next of kin of such deceased person.

740 Ill. Comp. Stat. Ann. 180/2 (emphasis added). Under section 2, the jury is given discretion to award damages to the injured party based on "grief, sorrow, and mental

suffering, and punitive damages when applicable." *Id.* Damages are to be apportioned to lineal and collateral next of kin, e.g., parents and siblings. Illinois Pattern Jury Instructions, Civil No. 31.03. When determining damages, the jury is instructed to consider factors including the money, benefits, goods, and services the decedent was likely to have contributed in the future; the decedent's age, health, and physical and mental characteristics; the grief, sorrow, and mental suffering of the decedent's next of kin; and the relationship between the decedent's next of kin and the decedent. *Id.*

Under the Survival Act, "actions to recover damages, including punitive damages when applicable, for an injury to the person" survive death and can be brought by the decedent's estate. 755 Ill. Comp. Stat. Ann. 5/27–6. If a defendant is found liable under the Survival Act, the jury will be instructed to compensate the decedent's estate for damages incurred between the time of injury and the time of death, "taking into consideration the nature, extent, and duration of the injury." Illinois Pattern Jury Instructions, Civil No. 31.10 (amended 2021).

Punitive damages are available under both the Wrongful Death Act and the Survival Act "when applicable." 740 Ill. Comp. Stat. Ann. 180/1–2; 755 Ill. Comp. Stat. Ann. 5/27–6. In Illinois, a plaintiff seeking punitive damages must file a pretrial motion seeking to amend their complaint to add a punitive damages claim; the complaint cannot contain the punitive damages claim when it is originally filed. 735 Ill. Comp. Stat. Ann. 5/2-604.1. The court shall allow the motion to include a prayer for relief seeking punitive damages "if the plaintiff establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *Id.* When so instructed, a jury can award punitive

damages to punish the defendant and to discourage the defendant and others from acting similarly. Illinois Pattern Jury Instructions, Civil No. 35.01 (amended 2007).

**C. The Fuller Family's Objection**

Following the claim estimation hearing, the Fuller Family objected to Mr. Hogan's methodology, arguing that Mr. Hogan's opinion should not be accepted by the court because it 1) failed to utilize any recognized methodology; 2) relied on only two cases in comparison while conducting no independent investigation of any underlying case; 3) ignored settlement data; 4) failed to analyze average jury verdicts; and 5) failed to apportion damages among the multiple defendants. (Post-Hearing Brief of Fuller Parties to Trustee's Motion for Claim Estimation ("Post-Hearing Brief"), Dkt. 439).

**i. The Methodologies Urged by the Fuller Family Are Not Required by Law.**

Existing case law is clear that no particular methodology must be employed when estimating the value of claims pursuant to § 502(c). *See, e.g.*, *In re C. F. Smith & Assocs., Inc.*, 235 B.R. 153, 160 n.10 (Bankr. D. Mass. 1999) (collecting cases that demonstrate the variety of permissible estimation methods). Accordingly, there is no merit to the Fuller Family's suggestion that "A claims estimator *must* take into account the likelihood that each party's version may or may not be accepted by a trier of fact, and then apply those probabilities to arrive at an expected value." (Post-Hearing Brief at 4, Dkt. 439) (emphasis added).

The Fuller Family is correct that an "expected value" methodology has been used by other bankruptcy courts in claim estimation proceedings. *See, e.g.*, *Farley*, 146 B.R. at 753–54; *Windsor*, 170 B.R. at 520–22. But the fact that a given methodology has been deemed appropriate by several courts, and even that such methodology *may* produce a more accurate estimation than another, does not make alternative methodologies inherently flawed. *See*

*Fed. Press*, 116 B.R. at 653 ("Estimation of a claim within the meaning of §§ 157 and 502(c) 'does not require that a bankruptcy judge be clairvoyant.' *In re Baldwin–United Corp.,* 55 B.R. 885, 898 (Bankr. S.D. Ohio 1985). Instead, a court only needs to reasonably estimate the probable value of the claim.").

The question, then, is whether it would be "reasonable" for this court to accept Mr. Hogan's particular estimation methodology—not whether it has been used in other courts. Answering this question requires analyzing Mr. Hogan's credibility and the thoroughness of his reasoning.

**ii. Mr. Hogan is a Recognized Expert Whose Methodology was Developed Based on His Years of Experience in Personal Injury and Wrongful Death Claims.**

Mr. Hogan is a former judge who presided over 400 jury trials to verdict, oversaw hundreds of non-jury trials, and conducted thousands of settlement conferences. He gained extensive experience on wrongful death and personal injury cases as a lawyer, judge, and—after retiring from the bench—as a mediator/arbitrator. *See* Expert Report at 4, Dkt. 374; Transcript of Record at 19–26, Dkt. 433. The parties agreed that Mr. Hogan was qualified for the task of estimating personal injury claims. *See* Transcript of Record at 11:6–8, 15:5–6, Dkt. 433.

The methodology Mr. Hogan used was developed based on his years of experience with personal injury and wrongful death lawsuits and because it is suited to the particular facts of the case. Mr. Hogan—again, a recognized expert—stated that the seven factors he relied upon in his analysis are frequently used by skilled mediators. Transcript of Record at 39:8–9, Dkt. 433. His conclusions are not mere *ipse dixit*. *Cf. Gen. Elec. Co. v. Joiner*, 522 U.S.

136, 146 (1997) (ruling that courts are not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Mr. Hogan was thorough, having considered over 100 reports contained within the Cook County Verdict Reporter. (Expert Report at 7, Dkt. 374). The fact that he found only two reports to be comparable to the facts in this case indicates only that the allegations in this case are extraordinary. *See id.* ("It is difficult to envision a more compelling case of injury leading to death and to the losses of all the Richards than what one finds here."). Accordingly, an unusually high estimation is not surprising. Further, for Mr. Hogan to ignore settlement data is not cause to redo the estimation process given that the Fuller Family was aware of his retention agreement and failed to retain their own expert. *See Windsor*, 170 B.R. at 520 ("It may sometimes be inappropriate to hold time-consuming proceedings which would defeat the very purpose of 11 U.S.C. § 502(c)(1) to avoid undue delay."). Finally, Mr. Hogan himself stated that he had "sufficient information" to estimate the value of the Richards claim. Expert Report at 5, Dkt. 374.

Although it may be theoretically possible to come up with a more precise methodology than that used by Mr. Hogan, the court is persuaded that his analysis was thorough and reliable. The court was further assured of the reliability of Mr. Hogan's opinion by watching his testimony and cross-examination at the estimation hearing.

**iii. Mr. Hogan's Methodology is Reasonable Compared to Methodologies Employed by Other Courts.**

For additional confirmation that Mr. Hogan's methodology was reasonable, the court looked to the methodologies used in other bankruptcy courts for the estimation of claims under § 502(c). Aside from confirming that a wide variety of methodologies are permissible,

this survey revealed several courts that used comparable or less thorough methodologies, lending support to Mr. Hogan's conclusions.

In *In re Seaman Furniture Co.*, 160 B.R. 40 (S.D.N.Y. 1993), the district court affirmed the United States Bankruptcy Court for the Southern District of New York's decision to rely on a non-binding arbitral decision as the basis for estimating a claim. The bankruptcy court's reliance on a third-party opinion is similar to this court's decision to rely on Mr. Hogan's third-party opinion.

In *In re Lane*, the Bankruptcy Court estimated a claim by subjectively assessing the likelihood of different litigation outcomes before selecting, without explicit mathematical reasoning, what it regarded as the present value of the claim. *See In re Lane*, 68 B.R. 609, 612–13 (Bankr. D. Haw. 1986) (noting that "this amount is not binding on the state court, nor is it even evidence of the amount of the indebtedness").

Additionally, *Fed. Press Co.* itself states that "accepting the claimant's claim at face value" would be a permissible method for estimating a claim under § 502(c). *Fed. Press Co*, 116 B.R. at 653. If accepting a claim at face value can be a reasonable methodology, Mr. Hogan's considerably more detailed reasoning and findings should also fall within the range of permissible methodologies.

**D. The Purpose of Section 502(c) is to Avoid Undue Delay.**

The court reminds the parties that the express purpose of § 502(c) is to avoid undue delay in the administration of the case. 11 U.S.C. § 502(c). In failing to retain their own expert, approving of the retention of Mr. Hogan, and then objecting to Mr. Hogan's findings, the Fuller Family threatens to unduly delay the administration of the present case. *See Bittner*, 691 F.2d at 137 (approving of a method of claims estimation that avoids undue

delay); *Windsor*, 170 B.R. at 520 ("It may sometimes be inappropriate to hold time-consuming proceedings which would defeat the very purpose of 11 U.S.C. § 502(c)(1) to avoid undue delay."); *Fed. Press Co.*, 116 B.R. at 653 (stating that estimates should be the court's best guess for the purpose of allowing the case to proceed and avoiding undue delay).

**E. Punitive Damages Should Not be Added for the Same Reasons.**

As stated, this court finds Mr. Hogan to be a credible expert on the possible damages that a jury would find after trial. In Mr. Hogan's opinion, given the evidence currently available to him, the plaintiffs are unlikely to receive punitive damages at trial. (Expert Report at 3–4, Dkt. 374; Transcript of Record at 40–41, Dkt. 433). The court believes that the same respect for Mr. Hogan's expert opinion already deemed appropriate in estimating the Richards claim is also appropriate when deciding whether to add punitive damages to the figure. Mr. Hogan's considerable experience in litigating and deciding personal injury and wrongful death claims equipped him to determine whether punitive damages are likely given available evidence. For the court to apply punitive damages now would be to guess what future discovery will reveal, a forward-looking prediction the court does not feel any better prepared than Mr. Hogan to make at this stage. *See Fed. Press*, 116 B.R. at 653 (cautioning that a judge need not be "clairvoyant").

**Conclusion**

For these reasons, the court believes that $68,000,000.00 is an appropriate estimation of the value of the Richards' claim under § 502(c). "It should be noted here that this amount is not binding on the state court, nor is it even evidence of the amount of the

indebtedness. It is merely the best estimate that this court can give on the present value of the likelihood of outcomes possible in this matter." *Lane*, 68 B.R. at 613.

Dated: September 4, 2026



Honorable Deborah L. Thorne
United States Bankruptcy Judge