UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| Fuller's Service Center, Inc., | ) | Case No. 25-01345 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Throne |

# **MEMORANDUM OPINION**

N. Neville Reid, the chapter 11 Trustee for the bankruptcy estate of Fuller's Service Center Inc. (the Debtor), seeks an order sustaining his Objection to Edwin Johnson's Untimely Proof of Claim. In response to the Trustee's objection, Mr. Johnson argues that his late-filed proof of claim should be allowed because his failure to timely file was the result of excusable neglect. (Response to Trustee's Objection to Proof of Claim, Dkt. 458 at 1). Because Mr. Johnson failed to establish excusable neglect, his untimely proof of claim is barred, and the Trustee's Objection is sustained as explained below.

## **BACKGROUND**

On July 17, 2023, Mr. Johnson was sitting in a restaurant located across the street from the Debtor's car wash business. He was severely injured when a 16-year-old employee of the Debtor lost control of a car he was driving out of the car wash. (Motion for Relief, Dkt. 281 at 2). In April 2024, Mr. Johnson filed suit against the Debtor in the Cook County Circuit Court for negligence,[1] which halted when the Debtor filed its bankruptcy petition in January 2025.

[1] *Johnson v. Fuller's Car Wash, Inc*, No. 2024L064019 (Ill. Cir. Ct. Jan. 20, 2026).

The Debtor listed Mr. Johnson's claim as "Unknown" on Schedule E/F. (Dkt. 32).[2] Mr. Johnson's counsel, Matthew Vogler, filed an appearance on March 4, 2025. (Dkt. 33). On March 12, 2025, the court set May 30, 2025, as the bar date for filing proofs of claim and stated in part, "[a]ny creditor failing to timely file a proof of claim as required by this Order may be forever barred from asserting such claim against the Debtor." (Dkt. 46). Matthew Vogler received copies of the Bar Date Notice by ECF on or about March 12.

On February 18, 2026, nine months after the bar date and nearly a year after he first appeared in this case, Mr. Vogler filed a Motion for Leave to Amend Proof of Claim or Alternatively to File Proof of Claim Instanter ("Motion"), arguing for the first time that Mr. Johnson was not required to file a proof of claim under 11 U.S.C. § 1111(a) or Rule 3003(c)(2). (Dkt. 302). The court set a briefing schedule, and the Trustee timely responded to Mr. Vogler's Motion. (Dkt. 317). Mr. Vogler's reply was due April 3, 2026, but he failed to file it. At an April 22 hearing, Mr. Vogler asked for a continuance, citing "personal issues." The Court extended his deadline to reply until April 24, but Mr. Vogler did not file his reply until May 13, 2026. (Dkt. 352). At a hearing on May 20, Mr. Vogler said he was "happy to withdraw [the Motion] and file a proof of claim" for Mr. Johnson.

Mr. Vogler filed a proof of claim on June 23, 2026, one month after the May 20 hearing and 389 days after the May 30, 2025 claims bar date. (Claim 33). On July 7, 2026, the Trustee filed an objection to Mr. Johnson's claim, arguing that it was untimely and should be disallowed under 11 U.S.C. § 502 and *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). (Dkt. 394). At the hearing on August 4, 2026, the

[2] The Debtor filed an amended Schedule E/F, but Mr. Johnson's claim remained listed as "Unknown." (Dkt. 219).

court set a briefing schedule requiring Mr. Vogler to respond to the Trustee's objection by August 11, 2026. Mr. Vogler did not file a response. The Trustee then filed a motion to sustain his objection to Mr. Johnson's claim by default. (Dkt. 450). At the hearing on the Trustee's motion on August 25, 2026, Mr. Vogler told the court that he was late in filing his response because he had "been ill and dealing with a newborn who does not sleep" and had finished his response but was also having issues with PACER. The court allowed Mr. Vogler additional time until August 25 at 4:00 p.m. to respond (Dkt. 457). Finally, on August 25 at 3:57 p.m., two weeks after the original deadline, counsel filed his response. (Dkt. 458).

## DISCUSSION

### 1. Authority Under the Federal Rules of Bankruptcy Procedure

Federal Rule of Bankruptcy Procedure Rule 3003(c)(2) provides that any "creditor or equity security holder whose claim or interest is not scheduled—or is scheduled as disputed, contingent, or unliquidated—must file a proof of claim or interest. A creditor who fails to do so will not be treated as a creditor for that claim for voting and distribution." Fed. R. Bankr. P. 3003(c)(2).

### I. Exceptions to the Proof of Claim Requirement

Rule 3003(c)(3) requires the court to set the bar date for filing claims in a chapter 11 case, but states that the court "may, for cause, extend the time. If the time has expired, the proof of claim or interest may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (3), (4), and (7)." Fed. R. Bankr. P. 3003(c)(3). The exceptions in Rule 3002(c)(2), (3), (4), and (7) allow the court to extend the time for an infant or incompetent person,[3] for

[3] "In the interests of justice, the court may extend the time for an infant or incompetent person . . . to file a proof of claim, but only if the extension will not unduly delay case administration." Fed. R. Bankr. P. 3002(c)(2).

an unsecured claim arising from a judgment,[4] for a claim arising from a rejected executory contract or unexpired lease, or by a party's motion to extend the time to file a proof of claim.[5] Rule 9006(b)(1) also authorizes courts to allow a late filing where the failure to act was the result of "excusable neglect." Fed. R. Bankr. P. 9006(b)(1).

Under Rule 3002(c)(7), a creditor may file a motion "before or after the time to file a proof of claim has expired, [and] the court may extend the time to file by no more than 60 days from the date of its order." Nevertheless, the court may grant the motion if it "finds that the notice was insufficient to give the creditor a reasonable time to file." Fed. R. Bankr. P. 3002(c)(7). A question raised by the reading of the Rules is whether Rule 3003(c)(3)'s incorporation of Rule 3002(c)(7) means that an expired chapter 11 bar date may be extended beyond 60 days *only* when the creditor lacked sufficient notice. If so, the answer regarding whether Mr. Johnson's untimely proof of claim should be barred may be reached based on the Rules alone. Mr. Johnson did not lack sufficient notice, and his proof of claim was delayed substantially more than 60 days after the bar date. But if Rule 9006(b)(1) remains a necessary analytical step, as Mr. Johnson argues, *Pioneer* provides additional guidance as to whether Mr. Johnson's substantial delay constitutes excusable neglect and thus warrants allowance of his untimely proof of claim.

---

[4] "This paragraph (3) applies if an unsecured claim arises in favor of an entity or becomes allowable because of a judgment to recover money or property from that entity or a judgment that denies or avoids the entity's interest in property. The claim may be filed within 30 days after the judgment becomes final. But the claim must not be allowed if the judgment imposes a liability that is not satisfied—or a duty that is not performed—within the 30 days or any additional time set by the court." Fed. R. Bankr. P. 3002(c)(3).

[5] "On a creditor's motion filed before or after the time to file a proof of claim has expired, the court may extend the time to file by no more than 60 days from the date of its order. The motion may be granted if the court finds that the notice was insufficient to give the creditor a reasonable time to file." Fed. R. Bankr. P. 3002(c)(7).

**II. Excusable Neglect**

Mr. Johnson argues that he should be permitted to file a late proof of claim under the excusable neglect standard. The Supreme Court explained the excusable neglect standard under Rule 9006(b)(1) in *Pioneer*. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). There, unsecured creditors of a chapter 11 debtor sought to extend the bar date for filing late proofs of claim due to excusable neglect. An official for the creditors received notice of the bar date as part of a "Notice for Meeting of Creditors" from the court. When the official inquired whether a bar date had been set, the creditors' attorney "assured" him that no bar date had been established. The creditors' attorney did not file a proof of claim until twenty days after the bar date but asked the court to accept the late-filed proof of claim because of excusable neglect. *Id* at 383.

The Bankruptcy Court refused to accept the late filing, holding that a party may claim excusable neglect only if the "failure to comply with the court's deadline was caused by circumstances beyond its reasonable control." *Id.* at 388. The Supreme Court reversed, finding that excusable neglect was a more "elastic" concept than understood by the lower courts. *Id.* at 392. The Court gave "little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date," focusing instead on the "peculiar" placement of the bar date in the notice to the creditors that could have "confused even persons experienced in bankruptcy." *Id.* at 398, 387 (cleaned up).

In determining whether neglect should be deemed "excusable," the Supreme Court considered the following factors: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted

in good faith." *Id.* at 395. In reversing, the Court "consider[ed] it significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases:"

> We agree with the [Court of Appeals] that the "peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting," without any indication of the significance of the bar date, left a "dramatic ambiguity" in the notification. . . . [W]ere there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be "excusable." In the absence of such a showing, however, we conclude that the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, "excusable."

*Id.* at 398–99 (internal citation omitted). The Supreme Court ultimately found that negligence could constitute excusable neglect when the circumstances surrounding counsel's failure to meet the deadline, when considered as a whole, justified the relief. *Id.* at 395.

Here, Mr. Johnson received sufficient notice of the bar date but waited substantially more than 60 days to file his claim. He therefore cannot obtain relief under Rule 3002(c)(7). Moreover, even if Rule 9006(b)(1) applies, the substantial length of delay and Mr. Johnson's failure to identify circumstances warranting the delay, as explained below, weigh against a finding of excusable neglect under the *Pioneer* standard. Both routes support the conclusion that Mr. Johnson's proof of claim should be barred.

**2. 11 U.S.C. § 1111(a)**

Under Section 1111(a), "[a] proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(a)(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated." 11 U.S.C. § 1111(a). In his Response to Trustee's Objection to Proof of Claim, Mr. Johnson argues that he satisfied the *Pioneer* standard and should be

allowed to file an untimely proof of claim if his claim is not deemed filed under Section 1111(a). (Dkt. 458). The Seventh Circuit has yet to address whether a creditor must file a claim if it is scheduled as "Unknown" but is also not scheduled as disputed, contingent, or unliquidated. One court in the Fifth Circuit found that a creditor *is* required to file a proof of claim if the debtor listed its claim as "unknown" but did not list the claim as either disputed, unliquidated, or contingent. *In re Pearl Res. LLC*, 643 B.R. 436, 463 (Bankr. S.D. Tex. 2022). The court held that under "Rule 3001(f),[6] prima facie evidence of validity and amount is only established once a timely proof of claim is properly filed." *Id.* By contrast, "[w]hen a claim is scheduled as 'unknown,' no amount is listed" and so "the scheduled claim could not possibly constitute prima facie evidence of amount. Therefore . . . when a claim is scheduled as 'unknown,' a creditor is required to file a proof of claim." *Id.*[7]

The court finds the Texas bankruptcy court's reasoning persuasive. The Debtor did not check any of the boxes labeled "contingent," "unliquidated," or "disputed." Mr. Vogler argues this means Mr. Johnson was not required to file a proof of claim. (Dkt. 302 at 2). But this assumes that the amount of the claim is listed and therefore known. Here, the Debtor filed Mr. Johnson's claim as unknown, so there was never prima facie evidence of the amount of Mr. Johnson's claim under Rule 3001(f). Accordingly, Mr. Johnson was required to file a timely proof of claim.

---

[6] "A proof of claim signed and filed in accordance with these rules is prima facie evidence of the claim's validity and amount." Fed. R. Bankr. P. 3001(f).

[7] *See also In re Qualteq, Inc.*, No. 11-12572, 2010 WL 11834136, at *3 (Bankr. D. Del. Sept. 3, 2010) (ordering that "if a creditor fails to timely file a proof of claim in these Chapter 11 Cases . . . and such creditor's claim is not listed in the Schedules, is listed in the Schedules in the amount of $0.00, 'Unknown' or 'Undetermined,' or is listed in the Schedules as disputed, unknown, contingent, or unliquidated, then such creditor shall not be treated as a creditor with respect to such claim for purposes of voting and distribution.")

**3. Under the Pioneer standard, Johnson's untimely proof of claim is barred.**

Mr. Johnson contends that his untimely proof of claim should nevertheless be permitted, arguing that his failure to timely file it constitutes "excusable neglect" under the standard articulated in *Pioneer*. (Dkt. 458). Applying each of the *Pioneer* factors in turn, while considering the totality of the circumstances, demonstrates that Mr. Johnson has failed to establish excusable neglect.

**I. The Danger of Prejudice to the Debtor**

The first *Pioneer* factor considers the danger of prejudice to the Debtor in allowing the late-filed claim. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Mr. Johnson argues that there is no danger of prejudice to the Debtor and that the Trustee "acts as though this case has progressed much further than it has." (Dkt. 458 at 5). Mr. Johnson relies in part on *In re Kmart Corp.*, in which the Seventh Circuit recognized that the size of a late claim was significant for the prejudice analysis, noting that a claim for $750,000 was "no small amount," but also cautioned against opening the door to additional late filed claims. *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004). Here, Mr. Johnson seeks $4.5 million, an amount substantially greater than the claim at issue in *Kmart*, and it appears that there may not be additional late claims waiting to be filed. (Dkt. 458 at 2) What Mr. Johnson fails to address is that the Trustee is attempting to form a plan and the claim filed more than 380 days after the bar date is significant and represents a new substantial liability that must now be incorporated into a plan if it is allowed.

Mr. Johnson argues that "[a]t present there exists no plan which would result in reorganization under Chapter 11," but the absence of a confirmed plan does not negate the possibility that a debtor may nonetheless suffer prejudice due to the allowance of an

untimely claim. (Dkt. 458 at 3). Mr. Johnson acknowledges that the Trustee is already in the process of estimating certain claims. *Id.* Permitting a $4.5 million claim more than 380 days after the court-ordered bar date would require the Debtor to account for a sizeable liability, and the Trustee would likely need to reevaluate his ongoing estimation. As such, the Trustee's absence of a confirmed plan does not negate the prejudice to the Debtor that excusing Mr. Johnson's extraordinary delay in bringing forth his claim would create.

**II. The Length of the Delay and its Potential Impact on Judicial Proceedings**

The next *Pioneer* factor considers "the length of the delay and its potential impact on judicial proceedings." *Pioneer*, 507 U.S. at 395. Mr. Johnson argues that he "has done nothing to delay these proceedings. It was his belief, based upon the clear language of the bankruptcy rules, that he was not required to file a proof of claim." (Dkt. 458 at 4). Mr. Johnson additionally argues that despite his significantly delayed response, the "resolution of this case is nowhere on the immediate horizon." *Id.* at 5.

In *Kmart*, the claimant filed its proof of claim only one day after the original bar date and moved to have the claim deemed timely filed based on excusable neglect. *Kmart*, 381 F.3d at 709. The Bankruptcy Court denied the motion and the Seventh Circuit affirmed, concluding that the claimant had failed to establish excusable neglect. *Id*. The Seventh Circuit found that "[l]ate-filed claims, especially in the bankruptcy context, disrupt orderly discharge and should generally be barred." *Matter of Plunket*, 82 F.3d 738, 741 (7th Cir. 1996) (quoting *Matter of Unroe*, 947 F.2d 346, 351 (7th Cir. 1991)). Here, Mr. Johnson's proof of claim was filed more than 380 days after the bar date. If a one-day delay was insufficient to establish excusable neglect in *Kmart,* a delay of more than 380 days weighs strongly against permitting Mr. Johnson's proof of claim.

### III. The Reason for the Delay, Including Whether it was Within the Reasonable Control of the Movant

The third *Pioneer* factor considers "the reason for the delay, including whether it was within the reasonable control of the movant." *Pioneer*, 507 U.S. at 395. It is unclear what circumstances are ultimately being asserted as the basis for Mr. Johnson's excusable neglect. Mr. Johnson argues that he "did not believe that he was required to file a proof of claim" and "took action to obtain relief from the automatic stay" quickly "after being apprised of the Trustee's belief that Johnson failed to file a proof of claim." (Dkt. 458 at 4–5). As the Seventh Circuit has noted, "[m]issing a filing deadline because of slumber is fatal." *Plunket*, 82 F.3d at 742. The Court in *Plunket* reasoned that the claimants' "assumption was not based on an interpretation (or even a plausible misinterpretation) of a statute, rule, or communication from the court; it was self-generated and foolish." *Id.* Here, Mr. Johnson made a legal judgment that filing a proof of claim was unnecessary, then waited 389 days to file. Although Mr. Vogler told the court that he was late in filing his response because he had been ill and dealing with a newborn child who had not been sleeping, he failed to mention those excuses in his Response. While the court may sympathize with Mr. Vogler's circumstances, it was within his reasonable control to present the court with evidence of his circumstances or proactively request an extension due to said circumstances, and he failed to do so.[8]

In *Pioneer*, the Court found excusable neglect not due simply to counsel's own oversight or counsel's failure to act; rather, the Court emphasized that the unusual manner

---

[8] Mr. Vogler provided the court with no affidavit nor other evidence corroborating the alleged circumstances that resulted in his delay. In particular, no evidence addressing the severity or duration of his illness, nor how caring for his newborn child prevented him from taking reasonable steps to comply with court deadlines. Ultimately, Mr. Vogler provided the court with no method to assess his excuses and determine whether his delay may have been reasonable.

in which the Bankruptcy Court communicated the bar date was a significant factor in their holding. *Pioneer*, 507 U.S. at 399. Despite Mr. Johnson's understanding, *Pioneer* does not create a safety net for counsel's mistaken interpretation of a clear bankruptcy deadline, nor does it provide a means to allow an extraordinarily late claim when the circumstances do not warrant excusing the delay. As such, the reason for delay weighs strongly against Mr. Johnson. The notice which was approved by this court was short, direct, and clearly explained the date by which claims must be filed and the possible results if a claim was untimely.

**IV. Whether the Movant Acted in Good Faith**

The final factor of the *Pioneer* analysis considers "whether the movant acted in good faith." *Id.* at 395. While no evidence of nefarious conduct was provided, the court finds that Mr. Johnson and his counsel had ample time to file a claim and failed to do so for well over one year. But the fact that perhaps this is not bad faith, is not sufficient to overcome the claim of excusable neglect. The good-faith consideration does not outweigh the other three *Pioneer* factors.

Considering the totality of the circumstances, the *Pioneer* factors demonstrate that Mr. Johnson has failed to establish excusable neglect.

**CONCLUSION**

Because Mr. Johnson has failed to establish excusable neglect, his untimely proof of claim is barred, and the Trustee's Objection is sustained.

Dated: September 17, 2026



Honorable Deborah L. Thorne
United States Bankruptcy Judge